**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Jeffrey Karl SCHULZ, Defendant-Appellant.**

No. 72-2645.

United States Court of Appeals, Ninth Circuit.

March 6, 1973.

Rehearing Denied March 27, 1973.

James G. Seely, Jr. (argued), San Francisco, Cal., for defendant-appellant.

James H. Daffer, Asst. U. S. Atty. (argued), Chester G. Moore, III, Michael Field, Asst. U. S. Attys., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for plaintiff-appellee.

Before HAMLEY, BROWNING and WRIGHT, Circuit Judges.

HAMLEY, *Circuit Judge:*

Jeffrey Karl Schulz appeals from a judgment of conviction for failing to report for induction in violation of 50 U. S.C. App. § 462(a). We affirm.

Schulz' Local Board 19, Napa, California, classified him I-A on August 31, 1966. On October 13, 1966, the board ordered him to report for a pre-induction physical examination on November 1, 1966. Schulz reported and was found acceptable for military service.

On February 26, 1970, the local board ordered Schulz to report for induction on March 17, 1970. Of the eight men called for that month, Schulz was the sixth in order of priority. He did not report on that date. On August 18, 1970, the local board mailed Schulz a continuing duty order with a reporting date of September 9, 1970. Again he did not report. On October 8, 1971, the local board mailed Schulz another continuing duty order, with a reporting date of November 9, 1971. Once more Schulz did not report. It is for this last failure to report that Schulz was prosecuted and convicted.

Schulz' only defense is that the February 26, 1970, induction order is invalid because he was prematurely called. He asserts that his call was premature because, on February 26, 1970, there were at least three other registrants of his draft board who had a higher induction priority (lower lottery number) than Schulz and who were fully available for induction except for the fact that they had not been physically examined on February 2, 1970, as they should have been under the applicable regulation. Schulz contends that the by-passing of these higher priority registrants for physical examinations resulted from a violation of the regulation (32 C.F.R. § 1628.11(b) (1970)) which sets forth the order in which men are to be called for physical examinations.[1]

---

1. 32 C.F.R. § 1628.11(b) (1970) reads in pertinent part:

"In complying with such Physical Examination Call . . . , the local board shall mail an Order To Report For Armed Forces Physical Examination . . . to registrants who have been classified in Class I-A, Class I-A-O, and Class I-O . . . . The local board shall, so far as is practicable, select and order to report for armed forces physical examination . . . such registrants who are nonvolunteers in the order of their liability for service."

Under this regulation, registrants, other than volunteers, are to be called for physical examination in the order of their liability for induction. Prior to January 1, 1970, the order of liability for induction was based on the oldest-first system. Beginning on that date, the order of liability was determined by the random selection system, such that the lower the lottery number the greater the induction liability.

Despite this change effective January 1, 1970, Schulz' local board did not call men for physical examinations in lottery-number order until April, 1970, but, until then, called men for physical examinations in the oldest-first order in force prior to January 1, 1970. The result was that, on February 26, 1970, when the local board ordered Schulz to report for induction on March 17, 1970, there were eight registrants of that board with higher induction priorities who would have then been subject to induction but for the fact that they had not been called for physical examinations under the system which became effective January 1, 1970.[2]

Since at least United States v. Baker, 416 F.2d 202, 204 (9th Cir. 1969), this court has recognized order-of-call defenses in Selective Service cases such as this. Ordinarily these defenses involve instances in which, it was asserted, higher-priority registrants would have been available for induction ahead of the defendant, were it not for improper processing of those registrants by the local board.

In United States v. Smith, 443 F.2d 1278 (9th Cir. 1971), we undertook to specify the elements which must be present to establish such a defense. We said:

"A registrant may rely upon improper processing of higher priority registrants in defending a criminal prosecution if he can establish (1) that his local board violated a specific regulation, and (2) that the result was to delay significantly the time when higher priority registrants became fully acceptable for induction." 443 F.2d, at 1280.[3]

The Government argues that, notwithstanding the facts recited above concerning the processing of Schulz and the eight other registrants, there was here no violation of a regulation nor any significant delay in the processing of the higher priority registrants.

As indicated above, Schulz contends that the local board violated 32 C.F.R. § 1628.11(b), because it did not call higher-priority registrants for physical examinations "in the order of their liability for service" which, after December 31, 1969, was by lottery number instead of oldest first. But the Government calls attention to the fact that this regulation qualifies this required local board procedure by the words "so far as is practicable."

In an effort to establish a factual basis for the contention that it was not practicable for the Napa local board to switch over from the oldest-first to the lottery system prior to April, 1971, the Government called Mrs. Jessie Lee as a witness. In late 1969 and early 1970, Mrs. Lee was executive secretary of the San Mateo, California local board, which had a roster of thirty-six thousand active registrants. Until shortly before the trial in July, 1972, and for some time prior thereto, she had been an administrative assistant with the Regional Council's Office for Selective Service.

Mrs. Lee explained that in switching to the lottery system it was necessary for a local board to take the file of each active registrant, determine the date of birth of the registrant, and then place on the file the random sequence number

2. While apparently not called in lottery number order, all eight of these challenged registrants received pre-induction physical examinations on March 11, 1970, and all were mailed orders to report for induction on March 23, 1970.

3. We also indicated, in *Smith*, that even where no regulation has been violated, if there has been intentional delay, discriminatory treatment, or favoritism, a defense may be established. *Smith*, 443 F.2d at 1280.

as established at the December, 1969, drawing of lottery numbers. Mrs. Lee testified that for her San Mateo local board it was necessary to close the local board office for four days in order to accomplish this change-over.

Mrs. Lee had no familiarity with the switch-over problem of the Napa local board. On the basis of her expertise, she was asked to estimate how much work would have been required for the Napa local board to make this switch-over. Mrs. Lee was unable to provide an estimate.

Mrs. Lee testified that her San Mateo local board construed the State Director of Selective Service's instructions on the Physical Examination Calls on Local Board for January, February and March, 1970, as authorizing local boards to continue calling registrants for physical examinations on the oldest-first basis through those months. The instruction on the Physical Examination Call dated January 7, 1970, reads:

> "In filling the attached requisition for pre-induction processing the local board will first order registrants who were born after January 1, 1944 and on or before December 31, 1950. The balance of the requisition will be filled out by ordering registrants born after December 31, 1950, the oldest first.
>
> "REGISTRANTS AVAILABLE FOR PHYSICAL EXAMINATION WILL BE SELECTED IN ACCORDANCE WITH SECTION 1628.11 OF SELECTIVE SERVICE REGULATIONS."

The collateral registrants here in question were in the first category described in these instructions, and all in that category had been assigned lottery numbers in the December, 1969, drawing. The instructions did not advise the local board to call registrants in that category for physical examinations in the oldest-first order. While the instructions did not expressly advise that those in this category were to be called for examination according to lottery number, this was implicit in the final sentence, quoted above, referring to section 1628.11 of the Selective Service Regulations. Giving application to that regulation, the conclusion is compelled that local boards were instructed to call registrants in the first category for physical examination in the order of their liability for service (by lottery number) "so far as practicable." Mrs. Lee testified that no local board in California ordered any physical examination on a lottery-number basis before April 1, 1970.[4]

Thus Mrs. Lee, and local boards who entertained her view of the meaning of these instructions, were mistaken in believing local boards had been given blanket authorization to continue physical examination calls in order of oldest-first through March, 1970.

Mrs. Lee also testified that no local board in Northern California ordered any physical examinations on a lottery-number basis before April 1, 1970. On cross-examination, however, Mrs. Lee conceded that she had no personal knowledge to support this statement. She had merely assumed that this was the case apparently on the basis of the instructions on the Physical Examination Calls and possibly a memorandum issued by the State Director instructing the larger local boards to close for a few days in March of 1970 in order to make the change to the lottery system.

We are forced to conclude from what is said above that the Government did not prove that the Napa local board acted pursuant to instructions from the State Director in failing to call the eight collateral registrants for physical examinations by February 2, 1970, and did not prove that it was not practicable for the Napa board to so call them by that date.[5]

---

4. However, as indicated in note 2, above, all eight of the collateral registrants here in question took their physical examinations on March 11, 1970, but apparently not on a lottery-number basis.

5. In United States v. Baker, 416 F.2d 202, 205 (9th Cir. 1969), we held that where an order of call issue is presented in a case such as this, the Government has the burden of proof to justify by affirmative evi-

This brings us to the Government's alternative contention that, even if there was improper processing of higher-priority registrants, the order-of-call defense, as outlined in United States v. Smith, 443 F.2d 1278, 1280 (9th Cir. 1971), was not established because the result of such impropriety was not to delay significantly the time when higher priority registrants became fully acceptable for induction.

All eight of the collateral registrants became fully acceptable for induction on March 11, 1970, and all were mailed orders to report for induction on March 23, 1970. Thus Schulz' original induction order of February 26, 1970 (to report for induction on March 17, 1970), preceded the availability of the collateral registrants for induction by not more than two weeks. In all likelihood, then, the impropriety of the local board's procedure resulted in Schulz being sent an induction order one month prematurely, namely in February instead of March, 1970.[6]

■ The trial court erred in failing to recognize that, under the circumstances of this case, the local board acted improperly, even though the initial induction order was entered only one month prematurely. In our view, however, the trial court's failure to acquit on this ground was harmless error.

It is true that the *Smith* and *Baker* opinions contain some language tending to indicate that the failure to acquit where there is any prematurity whatever in issuing the initial induction order is reversible error. However, in neither of those cases was the question of

harmless error presented or discussed. In our case that issue is plainly before us, although couched in terms of whether the delay in processing other registrants was "significant," rather than in the familiar term "harmless error."

In terms of its effect upon Schulz, the improper processing by the board, as we have seen, resulted in issuing the initial induction order (to report for induction on March 23, 1970) one month prematurely. But the prematurity of this initial order did not prejudice Schulz in the slightest. He was not prosecuted for failing to report on that date, but for failure to report on November 9, 1971, under a continuing duty order. Schulz' period of military service was not enlarged. He makes no claim that, by reason of the prematurity of the initial order, he was deprived of the right to file a conscientious objector application. Nor is there any showing of intentional discriminatory treatment or favoritism.

■ The order-of-call defense is just and proper when kept within reasonable bounds. But when it extends to the examination of local board procedures affecting collateral registrants twice or more removed from the defendant (not involved here) or takes account of relatively minor delays where no substantial prejudice is shown, it loses its force as an instrument of equity and becomes a hollow technicality. *See* United States v. Brudney, 463 F.2d 376, 378 (9th Cir. 1972); United States v. Griglio, 467 F. 2d 572 (1st Cir. 1972). We so view Schulz' order-of-call defense in the context of this case.

Affirmed.

---

dence the by-passing of the other registrants.

6. Except as to its bearing on the question of harmless error, to be discussed below,

we disregard the fact, noted at the outset of this opinion, that Schulz was convicted of failing to report for induction on November 9, 1971, under a continuing duty order.